26-3090

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

**VANESSA TUCKER**, individually and on behalf of those similarly situated,

*Plaintiff-Appellant,*

*v.*

**HARCROS CHEMICALS, INC.**,

*Defendant-Appellee.*

---

On Appeal from a Judgment of the United States District Court
for the District of Kansas, No. 2:25-cv-2569
Hon. Kathryn H. Vratil, District Judge

---

**Amicus Brief of Philips North America LLC (f/k/a Philips Electronics North America Corporation) In Support of Appellee and Affirmance**

---

John McGahren
**Morgan, Lewis & Bockius LLP**
502 Carnegie Center
Princeton, NJ 08540
Tel: 609.919.6641
john.mcgahren@morganlewis.com

Scott T. Schutte
**Morgan, Lewis & Bockius LLP**
110 North Wacker Drive
Chicago, IL 60606
Tel: 312.324.1773
scott.schutte@morganlewis.com

Randall M. Levine
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202.373.6541
randall.levine@morganlewis.com

Debra J. Carfora
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202.739.5757
debra.carfora@morganlewis.com

Attorneys for Amicus Curiae Philips North America LLC

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for amicus curiae Philips North America LLC certifies that Philips North America LLC (f/k/a Philips Electronics North America Corporation) is a wholly owned subsidiary of Philips Holding USA Inc., which in turn is a wholly owned subsidiary of Koninklijke Philips N.V.

# TABLE OF CONTENTS

**Page**

RULE 26.1 DISCLOSURE STATEMENT ........ i
TABLE OF AUTHORITIES ........ iii
INTEREST OF AMICUS CURIAE ........ 1
I. STATEMENT OF THE CASE ........ 3
II. ARGUMENT ........ 4
A. INTRODUCTION. ........ 4
B. KANSAS'S STATUTE OF REPOSE AND THE KPLA'S LIMITED EXCEPTIONS ........ 6
C. TUCKER'S CLAIM IS NOT A PRODUCT LIABILITY CLAIM, TO WHICH THE KPLA'S REPOSE EXCEPTIONS APPLY. ........ 8
D. SECTION 60-3303(B)(2)(D) DOES NOT APPLY TO TUCKER'S HISTORICAL-EMISSIONS CLAIM ........ 12
E. THE LEGISLATIVE HISTORY CONFIRMS THAT THE LEGISLATURE DID NOT INTEND TO CREATE A GENERAL LATENT-DISEASE EXCEPTION TO SECTION 60-513(B). ........ 14
F. THE STATUTE OF REPOSE APPLIES TO TUCKER'S MEDICAL MONITORING CLAIM ........ 18
III. CONCLUSION ........ 21
CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ........ 22
CERTIFICATE OF DIGITAL SUBMISSION ........ 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City of Manhattan v. Eriksen*,
204 Kan. 150, 460 P.2d 622 (1969)....................18

*Gaumer v. Rossville Truck & Tractor Co.*,
292 Kan. 749, 257 P.3d 292 (2011)....................18

*H.B. v. M.J.*,
315 Kan. 310, 508 P.3d 368 (2022)....................8

*Harding v. K.C. Wall Products, Inc.*,
250 Kan. 655, 831 P.2d 958 (1992)....................15

*Koch v. Shell Oil Co.*,
820 F. Supp. 1336 (D. Kan. 1993), *aff'd in part, rev'd in part on other grounds*,
52 F.3d 878 (10th Cir. 1995) ....................14, 17

*O'Neill v. Dunham*,
41 Kan. App. 2d 540, 203 P.3d 68 (2009)....................8, 19

*Patton v. Hutchinson Wil-Rich Mfg. Co.*,
253 Kan. 741, 861 P.2d 1299 (1993)....................10, 12

*Ropfogel v. Enegren*,
7 Kan. App. 2d 644, 646 P.2d 1138 (1982)....................18

*Savina v. Sterling Drug, Inc.*,
247 Kan. 105, 795 P.2d 915 (1990)....................12

*Tomlinson v. Celotex Corp.*,
244 Kan. 474, 770 P.2d 825 (1989)....................16

**STATUTES**

Idaho Code § 6-1402(3) (2026) ....................11

# TABLE OF AUTHORITIES
# (continued)

**Page(s)**

K.S.A.
§ 60-513(b)....................5, 7, 15–16, 19–20
§ 60-3302 ....................10–13
§ 60-3303 .................... 5–6, 8–10, 13–18, 20–21

Wash. Rev. Code § 7.72.010(3) (2026) ....................11

**OTHER AUTHORITIES**

F.R.A.P. 26.1....................3

H.B. 2689, 1990 Leg., Reg. Sess. (Kan. 1990)....................17

Kan. H. Journal, Mar. 6, 1990....................17

Kan. H. Judiciary Comm. Minutes, Jan. 30, 1990....................16

Kan. S. Journal, Mar. 30, 1990 ....................17

MUPLA § 102(c), 44 Fed. Reg. 62,714 (Oct. 31, 1979)....................10–11

## INTEREST OF AMICUS CURIAE[1]

Philips North America LLC (f/k/a Philips Electronics North America Corporation) ("PNA") submits this amicus curiae brief in support of Defendant-Appellee Harcros Chemicals Inc. ("Harcros") because Plaintiff-Appellant Vanessa Tucker's proposed construction of Kansas's statute of repose and the Kansas Product Liability Act ("KPLA") directly implicates PNA's interests in this case and related litigation.

Tucker sued PNA in this action based on alleged historical operations at the facility located at 5200 Speaker Road, Kansas City, Kansas (the "Facility").[2] The district court dismissed Tucker's claim against PNA on the same statute of repose grounds as the dismissal of claim against Defendant-Appellee Harcros, and Tucker initially appealed that dismissal. App. Vol. 2 at 89 (Notice of Appeal). Tucker subsequently voluntarily dismissed her appeal from the order dismissing her claim against PNA with prejudice. Dkt. No. 20 (Unopposed Motion to Dismiss Certain Appellees). PNA therefore is no longer a party to this appeal, but the statutory

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(2), all parties have consented to the filing of this amicus curiae brief by PNA. Undersigned counsel for PNA has authored this brief in full and no other party or person has contributed money to fund the preparation of this brief.

[2] PNA disputes Tucker's characterization of its relationship to the entity that historically owned and operated the Facility. In her Complaint, Tucker fails to differentiate among all the defendants, and between PNA and its former subsidiary, T H Agriculture and Nutrition Company, Inc., which actually owned and operated the Facility.

question Tucker continues to press against Harcros directly implicates PNA's interests in related litigation.

That interest is concrete, because PNA has faced materially similar claims in related litigation, *Jeffries v. Harcros Chemicals Inc.*, No. 2:25-cv-02352-KHV-ADM (the "*Jeffries* litigation"). There, the district court similarly dismissed the claims against PNA under Kansas's statute of repose and concluded that the KPLA's latent-disease exception did not apply because the plaintiffs had not alleged a product-liability claim. D. Kansas, No. 2:25-cv-02352, Dkt. No. 171 (Court Order). Certain *Jeffries* plaintiffs thereafter sought interlocutory review of substantially the same KPLA/repose issue presented here. The district court recognized that the same legal question governed its ruling as to PNA and included PNA's dismissal in its section 1292(b) certification. D. Kansas, No. 2:25-cv-02352, Dkt. No. 207 at 8-9, (Memorandum and Order). This Court denied permission to appeal without prejudice to review following final judgment. 10th Circuit, No. 26-6043, Dkt. No. 23 (Court Order). Thus, although PNA is no longer a party to this appeal, this Court's resolution of the question presented on appeal may bear directly on PNA's interests in any eventual appeal in *Jeffries*.

## I.

## STATEMENT OF THE CASE

Plaintiff-Appellant Vanessa Tucker alleges that operations at a facility located at 5200 Speaker Road, Kansas City, Kansas (the "Facility") released ethylene oxide ("EtO") and other chemicals into the surrounding community. App. Vol. 1 at 15 (Complaint ¶¶ 1-8). Her Complaint attributes certain historical operations at the Facility to Harcros. Critically for purposes of repose, however, Tucker alleges no operations, emissions, or other conduct attributable to Harcros after 2006, when Tucker moved away from the area of the Facility. App. Vol. 1 at 20-21 (Complaint ¶¶ 16, 17, 19). Thus, even accepting Tucker's allegations, the conduct she attributes to Harcros ended almost two decades before she filed this action.

Tucker does not allege that she presently suffers from any disease or other physical injury caused by the alleged emissions. Instead, she asserts a single claim for medical monitoring on behalf of a proposed class, seeking "injunctive and equitable relief through a court-supervised medical monitoring program to detect and mitigate future harm." App. Vol. 1 at 58 (Complaint ¶ 174). Tucker alleges that exposure to emissions from the Facility has placed her at a "significantly increased risk of chronic diseases" and seeks monitoring to permit "early diagnosis and intervention" should disease develop in the future. App. Vol. 1 at 59 (Complaint ¶¶ 178, 180). She expressly alleges that she has not suffered a present physical injury

and relies instead on an alleged "increased risk of serious disease." App. Vol. 1 at 59–60 (Complaint ¶¶ 182–83).

The district court dismissed Tucker's claim against Harcros under Kansas's ten-year statute of repose, K.S.A. § 60-513(b). App. Vol. 2 at 76 (Court Order). On appeal, Tucker continues to challenge the application of Kansas's statute of repose to her medical-monitoring claim against Harcros, including by invoking exceptions contained in the Kansas Product Liability Act ("KPLA"), K.S.A. § 60-3301 *et seq*. Those KPLA arguments, and the breadth Tucker asks this Court to give the KPLA's statutory exceptions to repose, are the subject of PNA's amicus submission.

## II.

## ARGUMENT

### A. Introduction.

The District Court correctly granted the motion to dismiss below on statute of repose grounds, and Tucker has failed to articulate any sound basis for reversal. Kansas law draws a deliberate line between its generally applicable statute of repose and the limited exceptions to the repose period the Legislature enacted for product-liability claims. Section 60-513(b) provides that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. § 60-513(b). The KPLA, in turn, contains specific exceptions to the general statute of repose applicable in product-liability cases. K.S.A. §§ 60-

3303(b)(2)(D), (d)(1). This appeal asks whether those exceptions can be extended beyond the product liability context to preserve a medical monitoring claim arising from alleged exposure to industrial emissions that occurred decades ago.

They cannot. As Harcros explains, Tucker's allegations do not satisfy the threshold requirements for the KPLA's exceptions. PNA writes separately to address the broader consequence of Tucker's construction: it would extend exceptions enacted within the KPLA intended to apply only to products liability claims to all claims related to historical industrial-emissions, based merely on their connection to manufacturing, and without any connection to harm allegedly caused by any purportedly defective product.

Tucker's claim underscores the problem. Tucker does not allege that she presently suffers from a latent disease caused by the alleged industrial emissions from a manufacturing process, nor does she allege she was injured by using or coming into contact with any particular defective product. She alleges an increased risk that disease may develop from exposure to industrial emissions and seeks medical monitoring to cover costs associated with detecting disease that may, or may not, develop in the future. The KPLA's statutory exceptions to the 10-year statute of repose accordingly are inapposite: KPLA section 60-3303(d)(1) expressly tolls the ten-year repose period in product liability cases for "the time to discover a disease which is latent caused by exposure to a harmful material." And KPLA section 60-

3303(b)(2)(D) provides that the 10-year repose period does not apply where (1) the harm was caused by prolonged exposure to a defective product; (2) an injury causing aspect of the product that existed at the time of delivery was not reasonably discoverable until more than ten years after delivery; or (3) harm caused within ten years of delivery did not manifest until later. Neither provision supplies a general exception to the repose period for claims arising from alleged exposure to historical industrial emissions or the risk of future disease.

The statutory text is accordingly clear and unambiguous, and this Court can apply it to the facts as written to affirm the judgment below. Plaintiff's alternative request to certify the question to the Kansas Supreme Court likewise should be denied, as the Kansas Supreme Court may not through interpretation create broader exceptions to the statute of repose than the Legislature enacted. The statutory text, structure, and legislative history demonstrate the boundary the Legislature drew; Tucker's medical monitoring claim falls outside it, and the judgment below should be affirmed.

## B. Kansas's Statute of Repose and the KPLA's Limited Exceptions

Kansas law establishes a ten-year outer limit on claims arising from a defendant's conduct: "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. § 60-513(b). Unlike a statute of limitations, which ordinarily governs the time for bringing an

accrued claim, a statute of repose measures time from the defendant's act and may extinguish a claim before it accrues. *O'Neill v. Dunham*, 41 Kan. App. 2d 540, 544, 203 P.3d 68, 71 (2009). The Kansas Supreme Court likewise has held that a statute of repose establishes a maximum period for seeking relief after the causative event, even where no discernible injury has yet manifested. *H.B. v. M.J.*, 315 Kan. 310, 312, 508 P.3d 368, 371 (2022). The KPLA does not displace that generally applicable rule. Rather, section 60-3303 identifies particular circumstances in which the ten-year repose period operates differently in a product liability claim. Two provisions are relevant here.

*First*, section 60-3303(d)(1) provides:

> In a product liability claim against the product seller, the ten-year limitation, as defined in K.S.A. 60-513, and amendments thereto, shall not apply to the time to discover a disease which is latent caused by exposure to a harmful material, in which event the action shall be deemed to have accrued when the disease and such disease's cause have been made known to the person or at the point the person should have been aware of the disease and such disease's cause.

K.S.A. § 60-3303(d)(1). By its terms, subsection (d)(1) is limited to a "product liability claim against the product seller" involving discovery of "a disease which is latent."

*Second*, KPLA section 60-3303(b) addresses products liability claims alleging harm occurring beyond a product's presumed "useful safe life:"

> (b)(1) In claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the

> useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.
>
> …
>
> (b)(2)(D) The ten-year period of repose established in paragraph (1) of this subsection shall not apply if the harm was caused by prolonged exposure to a defective product, or if the injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery, or if the harm caused within 10 years after the time of delivery, did not manifest itself until after that time.

K.S.A. § 60-3303(b)(2)(D). Subsection (b)(2)(D), therefore, operates within a statutory framework expressly concerned with claims about a product, the product's delivery, its useful safe life, and harm caused by a defective or otherwise injury-causing aspect of that product. Section 60-3303(d)(1) likewise is limited to product liability claims, as it expressly begins with the phrase "[i]n a product liability claim against the product seller."

Both provisions thus create exceptions to the general statute of repose only for cases alleging product liability claims, and Tucker's allegations do not satisfy that threshold requirement.

### C. Tucker's Claim Is Not A Product Liability Claim, to Which the KPLA's Repose Exceptions Apply.

Tucker's invocation of the KPLA's exceptions fails at the threshold, because she alleges no product liability claim. Rather, Tucker alleges a claim for medical monitoring, based upon alleged exposure to chemicals released into the environment

as emissions from industrial operations. That is not a product liability claim, because the emissions created as a byproduct of the manufacturing process to which Tucker allegedly was exposed are not a "product." Treating Tucker's medical monitoring claim as though it were a product-liability claim would contradict the text and underlying intent of the KPLA by detaching its repose exceptions from the product-liability context in which the Legislature enacted them.

The KPLA's text confirms that distinction. Although the Act does not separately define "product," its operative definitions repeatedly connect "product liability" to claims alleging injuries caused by products manufactured or sold for use or consumption. A "product seller" is a person "engaged in the business of selling products, whether the sale is for resale, or for use or consumption," and a "manufacturer" is one who manufactures a product "before its sale to a user or consumer." K.S.A. § 60-3302(a)–(b). Likewise, the repose provisions themselves speak in product-centered terms: section 60-3303(b) addresses the product's "time of delivery," its "useful safe life," and harm caused by a "defective product" or an "injury-causing aspect of the product." K.S.A. §§ 60-3302(b)(1), (b)(2)(D). Read together, those provisions contemplate claims alleging injuries caused by a product introduced into commerce, not claims alleging exposure to a substance released into the environment as a consequence of manufacturing activity.

The correct reading is reinforced by the Model Uniform Product Liability Act

("MUPLA"), on which the KPLA was based. *See Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 756, 861 P.2d 1299 (1993) (observing that Kansas's Legislature based the KPLA on the MUPLA). The MUPLA defines a "product" as an object "produced for introduction into trade or commerce." MUPLA § 102(c), 44 Fed. Reg. 62,714 (Oct. 31, 1979). That commerce-based understanding accords with the KPLA's repeated references to sellers, users, consumers, and delivery.[3]

Tucker does not allege that she purchased, used, consumed, or otherwise encountered a product manufactured or sold by Harcros (or PNA). Nor does she allege that the emissions themselves were products manufactured for sale or introduced into commerce. Her claim is that industrial operations at the Facility released EtO and other chemicals into the ambient environment and that exposure to those emissions increased her risk of future disease.

Tucker seeks to bridge that gap by emphasizing the supposed breadth of section 60-3302(c), which defines a "product liability claim" to include claims for harm caused by, among other things, the "manufacture," "production," "preparation," or "storage" of the relevant product. But that argument reads the listed activities apart from the object they modify—the relevant product. Section 60-

[3] Other state product-liability statutes likewise define "product" in commerce-oriented terms. *See, e.g.*, Wash. Rev. Code § 7.72.010(3) (2026); Idaho Code § 6-1402(3) (2026).

3302(c) may encompass multiple theories of liability and multiple forms of conduct involving a product, but it does not eliminate the requirement that the alleged harm arise from injury allegedly caused by the relevant product. Thus, section 60-3302(c)'s references to the "manufacture" and "production" of a product necessarily refer to product liability claims alleging a manufacturing defect, not to claims arising generally from the manufacturing of products divorced from any harm caused by the product itself. Otherwise, virtually any tort arising from commercial manufacturing would be a "product liability claim," including workplace injuries and employment discrimination claims, merely because a product happened to be manufactured or stored at a facility where the allegedly tortious conduct occurred.

That is not what the Legislature intended when it passed the KPLA. The Kansas Supreme Court has construed section 60-3302(c) as encompassing different theories of recovery for product liability, not as eliminating the requirement that the claim arise from the relevant product. *Patton*, 253 Kan. at 756 (explaining that section 60-3302(c) merges negligence, strict liability, and failure to warn theories into a single "product liability claim."); *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 126, 795 P.2d 915 (1990) (explaining that section 60-3302(c) applies the KPLA to product-liability claims sounding in strict liability, negligence, warranty, and failure to warn). Nothing suggests that the Legislature intended the KPLA to absorb any other tort claims, much less those alleged here concerning industrial emissions,

simply because those torts occurred during the manufacture of something else. The district court recognized precisely that distinction in the related *Jeffries* litigation: although a literal reading of isolated language in section 60-3302(c) could appear broad, read properly they do not apply to the facts alleged there, because the alleged harm arose from emissions resulting from manufacturing and storage processes rather than from the products themselves. D. Kansas, No. 2:25-cv-02352, Dkt. No. 166 at 11-13 (Memorandum and Order).

The same reasoning obtains here and compels affirmance. Tucker invokes the KPLA not as the substantive basis for her claim, but to avoid the otherwise applicable statute of repose. Extending the KPLA's repose exceptions to industrial emissions that are not themselves the relevant product would expand those exceptions beyond the statutory text and Legislative intent.

### D. Section 60-3303(b)(2)(D) Does Not Apply to Tucker's Historical-Emissions Claim

Tucker separately invokes section 60-3303(b)(2)(D), but that provision is part of the KPLA's "useful safe life" framework, not an independent exception applicable to harmful exposures generally. Section 60-3303(b)(1) addresses harm caused by a product occurring more than ten years after the product's "time of delivery," and subsection (b)(2)(D) repeatedly speaks in the same product-specific terms: "prolonged exposure to a defective product," an "injury-causing aspect of the product that existed at the time of delivery," and harm measured from "the time of

delivery." K.S.A. § 60-3303(b)(2)(D). Read in context, the provision addresses delayed harm associated with a product delivered into commerce, not exposure generally to any harmful substance generated by industrial activity.

Tucker alleges no exposure to a defective product, no injury-causing aspect of a product existing at delivery, and no product delivered to her or anyone else. She instead alleges that industrial operations released chemicals into the surrounding environment. Their alleged connection to manufacturing does not transform those emissions into the "product" contemplated by subsection (b)(2)(D).

*Koch v. Shell Oil Co.*, 52 F.3d 878 (10th Cir. 1995), does not support a broader reading. Tucker mistakenly relies on *Koch* for the propositions that subsection (b)(2)(D) is not confined to "durable goods" and that section 60-3303 may operate as an exception to the ten-year repose period. Dkt. No. 26-1 at 11-12. But neither point transforms industrial emissions into a "product" that is the necessary predicate to invoke the KPLA's exceptions. *Koch* involved product-liability claims about Rabon, an oral pesticide that the plaintiff purchased and fed to his dairy cattle. After allegedly suffering personal injuries, cattle deaths, and business losses associated with use of Rabon, the plaintiff sued the pesticide's manufacturer and distributor. 52 F.3d at 880.

Thus, *Koch* occurred entirely within the context of exactly the kind of product-liability case to which the KPLA applies. *Koch* did not involve ambient industrial

emissions generated during the manufacture of other products—it involved claims arising directly from use of, and exposure to, the allegedly injury-causing product itself. The relevant distinction here is not between durable and nondurable products, but between harm from a product and harm from industrial emissions generated in the course of manufacturing.

*Harding v. K.C. Wall Products, Inc.,* 250 Kan. 655, 831 P.2d 958 (1992), on which Tucker also mistakenly relies, only reinforces the distinction. There, the plaintiff alleged injury resulting from exposure to asbestos-containing drywall products manufactured and sold by the defendant. *Id.* at 960–62. *Harding* holds that an injured plaintiff need not *purchase* a product to be injured by it, but it remains a traditional product liability case arising from direct exposure to a product. Tucker alleges no comparable exposure to a product manufactured or sold by Harcros or PNA.

Section 60-3303(b)(2)(D), therefore, provides no alternative route around section 60-513(b).

### E. The Legislative History Confirms That the Legislature Did Not Intend To Create a General Latent-Disease Exception to Section 60-513(b).

Tucker's argument for applying the KPLA's latent-disease repose exception to her medical monitoring claim is also incompatible with the exception's legislative history. The history of section 60-3303(d) confirms what its text makes clear: the

Legislature addressed the problem of latent disease without creating a generally applicable exception to Kansas's statute of repose.

The Kansas Supreme Court confronted the question of latent disease in the context of the 10-year statute of repose in *Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825 (1989) (overruled on other grounds). There, the plaintiff alleged that exposure to asbestos products between 1965 and 1971 caused an asbestos-related disease that was not reasonably ascertainable until 1986. *Id.* at 826. The court held that section 60-513(b)'s ten-year repose period nevertheless applied, reasoning that the statute expressly reached personal-injury actions, including claims involving latent disease. *Id*. at 828–30. The court further rejected the argument that the existing useful-safe-life provisions of section 60-3303(b)(2)(D) displaced section 60-513(b), emphasizing that section 60-3303(c) expressly preserved the application of section 60-513. *Id*. at 830.

The Legislature responded to *Tomlinson* the following year, but not by creating a general latent-disease exception to section 60-513(b). The legislative materials reflect concern that *Tomlinson* could extinguish latent-disease claims before the disease became discoverable, with asbestos exposure serving as the principal example. Kan. H. Judiciary Comm. Minutes, Jan. 30, 1990, at 2.

The path the legislation took is particularly instructive. The original House proposal would have amended section 60-513 itself to provide that the ten-year

repose period would not apply to "the time to discover a disease which is latent caused by exposure to a harmful material," with accrual occurring when the disease and its cause became known or reasonably should have become known. Kan. H. Journal, Mar. 6, 1990, at 1603-04. That proposal was not limited to product liability claims or claims against product sellers. Had it been enacted, the proposal would have created a latent-disease exception directly within Kansas's generally applicable repose statute, without limiting that exception to product-liability claims.

The Legislature did not enact that broader proposal. Following amendments during the legislative process, the latent-disease provision was instead enacted as part of the KPLA and expressly limited to cases involving "[a] product liability claim against the product seller." K.S.A. § 60-3303(d)(1); H.B. 2689, 1990 Leg., Reg. Sess. (Kan. 1990); Kan. S. Journal, Mar. 30, 1990, at 1499-1500. The district court in *Koch* recognized the significance of that change, explaining that placement of the amendment in the KPLA demonstrated an intent "to limit the exception to a specific class of tort actions—product liability claims," whereas the original House version "would have been considerably broader." *Koch v. Shell Oil Co.*, 820 F. Supp. 1336, 1342 (D. Kan. 1993), *aff'd in part, rev'd in part on other grounds*, 52 F.3d 878 (10th Cir. 1995).

Kansas law gives significance to that change. Courts consider "legislative proceedings and changes made in a statute during the course of its enactment,"

including provisions proposed and rejected, when discerning legislative intent. *Ropfogel v. Enegren*, 7 Kan. App. 2d 644, 646, 646 P.2d 1138, 1139 (1982). And rejection of a specific provision is persuasive evidence against construing the enacted statute to accomplish substantially the same result. *See City of Manhattan v. Eriksen*, 204 Kan. 150, 154, 460 P.2d 622, 625 (1969); *see also Gaumer v. Rossville Truck & Tractor Co.*, 292 Kan. 749, 756, 257 P.3d 292 (2011) (removal of proposed KPLA language "may speak volumes").

The contrast between the proposed and enacted provisions cannot be reconciled with Tucker's construction. The broader proposal would have addressed latent disease directly through section 60-513 without regard to whether the underlying claim sounded in product liability. The Legislature instead enacted an exception expressly confined to "a product liability claim against the product seller." K.S.A. § 60-3303(d)(1). Tucker now asks the Court to read that product-liability exception to reach claims based on historical industrial emissions simply because those emissions allegedly occurred during the manufacture or storage of products.

Indeed, Tucker's theory is that the KPLA applies because it was the "'manufacture' and so forth at the Facility that harmed Tucker, because the manufacturing spewed out EtO." Dkt. No. 26-1 at 10. That construction requires reading into the KPLA precisely the breadth the Legislature considered and rejected.

### F. The Statute of Repose Applies to Tucker's Medical Monitoring Claim

Tucker argues that the application of section 60-513(b) cannot be determined until the Kansas Supreme Court first defines the elements of a medical-monitoring claim. Dkt. No. 26-1 at 7-8. According to Tucker, because section 60-513(b) runs from "the act giving rise to the cause of action," the relevant act might depend on whether Kansas treats medical monitoring as involving an ongoing duty, cumulative exposure, the point at which monitoring becomes medically necessary, or some other event. *Id.* at 8. But that argument conflates the nature of the alleged injury or remedy with the defendant's act from which the claim arises.

Section 60-513(b) does not measure repose from the date a plaintiff's injury manifests, the date a plaintiff discovers the need for relief, or the date all elements of a cause of action accrue. It provides that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. § 60-513(b). That is the defining feature of a statute of repose. Unlike a limitations period tied to accrual or discovery, repose establishes an outside limit measured from the time of the defendant's conduct. *See O'Neill*, 203 P.3d at 71.

Tucker's proposed medical-monitoring claim does not alter the conduct from which her claim arises. The Complaint alleges that operations at the Facility emitted EtO and other chemicals, that Tucker was exposed to those emissions, and that the

exposure increased her risk of disease sufficiently to require medical surveillance. App. Vol. 1 at 16–17 (Complaint ¶¶ 1-8). Whatever specific elements a hypothetical medical monitoring claim in Kansas might require, the allegedly wrongful acts remain the industrial operations and emissions that Tucker says caused the exposure, causing the asserted need for monitoring. Defining the contours of a medical monitoring cause of action therefore is not necessary to identify the defendant conduct to which section 60-513(b) attaches.

Tucker's medical monitoring claim also highlights a separate problem with her invocation of section 60-3303(d)(1). That provision suspends the ten-year limitation for "the time to discover a disease which is latent caused by exposure to a harmful material." K.S.A. § 60-3303(d)(1). Tucker does not allege that she presently has a latent disease awaiting discovery. She expressly alleges that she has suffered no present physical injury and instead there is an increased risk that disease may develop in the future. App. Vol. 1 at 59–60 (Complaint, ¶¶ 178, 180, 182-83). The monitoring she seeks is intended to detect such disease if and when it develops.

Tucker nevertheless argues that subsection (d)(1) applies because her claim relates to medical monitoring and the time it will take "to discover latent diseases caused by exposure to a harmful material." Dkt. No. 26-1 at 11. But the statutory language does not create an exception for the *future possibility* of developing a latent disease. It tolls the period of repose for "the time to discover a disease *which is*

*latent*," in the present tense. K.S.A. § 60-3303(d)(1). Reading that language to encompass monitoring undertaken to determine whether disease will ever develop would extend an exception for discovering a presently existing latent disease into an exception for the risk of developing disease in the future.

The Legislature knew how to address latent harms and specified the circumstances in which delayed discovery of disease would displace the ordinary repose rule. Nothing in section 60-3303(d)(1) suggests that the Legislature intended to create an additional period outside repose whenever exposure allegedly increases the risk that disease might later develop. Tucker's proposed reading would expand the exception in two directions at once: beyond product-liability claims to historical industrial emissions, and beyond latent disease to claims seeking surveillance for the possibility of future disease.

The Court therefore need not determine whether Kansas recognizes medical monitoring or define every element of such a claim to resolve the repose issue. Whatever the contours of that claim, Tucker's medical-monitoring theory does not bring it within the limited latent-disease exception the Legislature enacted. Nor does the Court need to certify a question about the applicability of the latent-disease exception to non-product liability claims, where that question has already been definitively addressed by the Kansas legislature.

## III.

## CONCLUSION

For the foregoing reasons, PNA respectfully requests that this Court affirm the district court's application of Kansas's statute of repose and decline Tucker's request to certify the statute-of-repose question to the Kansas Supreme Court.

DATED: October 5, 2026 **Morgan, Lewis & Bockius LLP**

By: *s/ John McGahren*

John McGahren
502 Carnegie Center
Princeton, NJ 08540
Tel: 609.919.6641
john.mcgahren@morganlewis.com

Scott T. Schutte
110 North Wacker Drive
Chicago, IL 60606
Tel: 312.324.1773
scott.schutte@morganlewis.com

Randall M. Levine
Debra J. Carfora
1111 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202.373.6541
Tel: 202.739.5757
randall.levine@morganlewis.com
debra.carfora@morganlewis.com

*Attorneys for Amicus Curiae Philips North America LLC (f/k/a Philips Electronics North America Corporation)*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This document complies with the word limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 4,628 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman type style and 14-point type.

DATED: October 5, 2026 **Morgan, Lewis & Bockius LLP**

By: *s/ John McGahren*
John McGahren

*Attorneys for Amicus Curiae Philips North America LLC (f/k/a Philips Electronics North America Corporation)*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) All required privacy redactions have been made per 10th Cir. R. 25.5;

(2) If required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program are free of viruses.

DATED: October 5, 2026 **Morgan, Lewis & Bockius LLP**

By: *s/ John McGahren*
John McGahren

*Attorneys for Amicus Curiae Philips North America LLC (f/k/a Philips Electronics North America Corporation)*